# Exhibit A

**✶P Pinnacle**
**◢P Polymers**

CONFIDENTIAL

PO Drawer E, One Pinnacle Avenue, Garyville, Louisiana 70051  (985) 535-2000  Fax(985)535-1234

# POLYPROPYLENE SALES AGREEMENT

This agreement (the "Agreement") is between PINNACLE POLYMERS, LLC, headquartered at One Pinnacle Avenue, Garyville, Louisiana 70051, (the "Seller"), and F&M Tool and Plastics, Inc., also known as "F&M" with a place of business at 163 Pioneer Drive, Leominster, MA 01453 (the "Buyer").

WHEREAS, Seller is in the business of manufacturing specialized polypropylene; and,

WHEREAS, Buyer requires polypropylene in the operation of its business; and,

WHEREAS, Seller and Buyer have agreed upon terms by which Seller will sell and Buyer will buy polypropylene; and,

NOW THEREFORE, intending to be legally bound, based on ample consideration, the receipt of which is hereby acknowledged, Seller and Buyer (collectively, the "Parties" or "Party") agree to the following terms and conditions:

1. The Parties hereby incorporate the recitals as set forth above into this Agreement.

2. *Term* - This Agreement shall commence on May 1, 2018 and expire on April 30, 2019 (the "Term"). Neither Party shall have the right to terminate this agreement or unilaterally amend the Term, except as set forth herein.

3. *Product* - Pursuant to this Agreement, Seller shall provide Buyer with Pinnacle™ 2180H and 6180C3 or their equivalents (the "Products").

4. *Quantity* - During each month (the "Period"), Seller shall ship and Buyer shall purchase at least two (2) but no more than three (3) bulk railcars of 2180H and at least two (2) but no more than three (3) bulk railcars of 6180C3, each of which shall contain approximately two hundred thousand pounds (200,000) of Product, depending on Product density and railcar capacity.

5. *Purchase Orders* - Seller's shipments shall coincide with purchase orders, which shall be placed by Buyer no less than thirty (30) days in advance of the first day of the month in which shipment is to be made. Purchase orders are considered successfully placed only upon Buyer's receipt of Seller's written acceptance. Once accepted, Buyer shall not cancel, alter, or amend the purchase order in any way, absent Seller's written consent. Buyer shall provide Seller a ninety (90) day rolling forecast of anticipated requirements. Failure to provide such a forecast may result in Seller's inability to satisfy Buyer's purchase orders.

6. *Shipping* - Shipments shall be CPT, pursuant to Incoterms 2010, and shall be sent to F&M 163 Pioneer Drive, Leominster, MA 01453 by means of lowest cost shipping method. Risk of loss and title shall pass to Buyer upon acceptance of materials by carrier at point of shipment. Seller is not required to deliver any quantities for which Buyer has not provided adequate shipping instructions. All shipping information transmitted to Buyer, including shipping and delivery date, represents only the best estimates of Seller. In the event that delays are encountered in production and/or shipping, the estimated shipping schedule may be extended in order to accommodate such delays. Seller shall not be liable for direct, indirect or consequential loss or damage due to delays. Seller shall determine invoice weight from a certified scale certificate. Seller's quantity determination will govern. Buyer will promptly unload each shipment at its own risk and expense, including any demurrage or detention charges.

7. *Price* - Product Price ("Price") shall be determined monthly, based on the current month's IHS Chemical/CMAI Monomers Market Report (North America Polymer Grade Propylene Benchmark Stream Value) ("Market Report") in cents per pound plus the Spread. For Example: If December's Market Report rate is $0.51 per pound and the Spread is $0.21, December's invoice Price would be $0.72 ($0.51 + $0.21) per pound.

Spreads are as follows:

FOR DELIVERY VIA RAILCAR TO THE RAILSIDING AT 163 Pioneer Drive, Leominster, MA 01453:

PRODUCT 2180H or equivalent - $0.21 (twentyone cents)

PRODUCT 6180C3 or equivalent - $0.225 (twentytwo cents)

The Spread may be increased by written notice from Seller. Seller's written notice shall contain the proposed change to Spread and a proposed date the new Spread will become effective (the "Effective Date"). If Buyer chooses to reject the increase in Spread, Buyer shall give written notice of non-acceptance within fifteen (15) days of receipt of written notice from Seller (the "Response Period"). In no event shall the Effective Date fall within thirty (30) days of the last day of the Response Period. If Buyer gives written notice of non-acceptance during the Response Period and Buyer and Seller cannot agree on Spread prior to the Effective Date, after negotiating in good faith, Seller shall no longer be obligated to deliver and Buyer shall no longer be obligated to purchase material(s); the Parties will have terminated the Agreement by mutual consent. If Buyer does not serve Seller with written notice of non-acceptance during the Response Period, the new Spread will take effect on the Effective Date. Any orders shipped on or after the Effective Date shall be priced according to the new Spread. Seller retains the right to unilaterally decrease the Spread at its sole discretion and without prior notification to Buyer. A Spread decrease instituted by Seller shall not give the parties the ability to terminate this Agreement.

8. *Payment* - Terms of payment are net thirty (30) days from the date of shipment; provided, however, that Seller may, at its sole discretion, revise the stated credit terms whenever it deems such action advisable. Invoices paid beyond agreed upon terms are subject to a late charge of one and a half percent (1.5%) per month or the maximum allowed by law, whichever is greater. Further, if in Seller's sole judgment, Buyer's credit shall become impaired at any time, Seller shall have the right to decline to make deliveries, except when deliveries are paid in cash prior to delivery, until such time as Buyer's credit has been reestablished to Seller's satisfaction. Any tax, excise or governmental charge imposed upon the production, sale, use or transportation of or value added to any material sold hereunder which Seller may be required to pay, shall be paid by Buyer to Seller in addition to the purchase price. Buyer shall provide Seller, upon request, with


**Pinnacle Polymers**

CONFIDENTIAL

PO Drawer E, One Pinnacle Avenue, Garyville, Louisiana 70051 (985) 535-2000 Fax(985)535-1234

completed exemption certificates for any tax from which Buyer claims exemption.

9. *Confidentiality* – This Agreement and all its terms are confidential. Buyer hereby agrees to hold all information contained in this Agreement and conveyed during contract negotiations as confidential.

10. *Force Majeure & Planned Shutdowns* - Seller shall not be liable for failure or delay in performance hereunder due in whole or in part to (i) acts of God, (ii) strikes, lockouts, or other labor disputes, (iii) civil commotion, sabotage, fire, flood, or explosion, (iv) acts of any governmental agency or authority, (v) unforeseen shortages or unavailability of fuel, power, transportation, raw materials, supplies, or feedstock, (vi) inability to obtain or delay in obtaining necessary equipment or governmental approvals, permits or licenses, (vii) mechanical failure, (viii) or any other cause which is not within the reasonable control of Seller, whether or not of the kind specifically enumerated above. From time to time Seller may schedule and carryout a planned shutdown of its plant to perform maintenance or to allow a supplier to perform maintenance (a "Scheduled Shutdown"). Seller agrees to provide Buyer with at least ninety (90) days notification of any such Scheduled Shutdown and no Scheduled Shutdown shall last for more than ninety (90) days in duration. During and for a period of thirty (30) days following a Scheduled Shutdown, Seller may be unable to fulfill orders or parts of orders. The parties agree that Seller shall be released from any and all contractual obligations that arise from a Scheduled Shutdown.

11. *Inspections and Claims* - Buyer shall inspect and test the delivered Product for damage, defect or shortage immediately upon receipt, and shall notify Seller of any such damage, defect or shortage within ten (10) days of receipt. All claims for any cause whatsoever, whether based in contract, negligence or other tort, strict liability, breach of warranty or otherwise, shall be deemed waived unconditionally and absolutely unless Seller receives written notice of such claim not later than thirty (30) days after Buyer's receipt of the goods with respect to which such claim is made.

12. *Seller's Limited Warranty* - As to the goods delivered hereunder, Seller warrants good title for a period of thirty (30) days following Buyer's receipt of Product. THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. Buyer shall promptly notify Seller of any suspected breach of Seller's warranty.

13. *Buyer's Representations and Warranties* – Buyer hereby warrants it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation or formation and has all requisite corporate power and authority to carry on its business as now being conducted and to enter into and perform its obligations under this Agreement. Buyer represents and warrants that it has not filed for bankruptcy, nor does it have any intention to do so within the Term of this Agreement. Buyer is not subject to insolvency proceedings or any legal proceedings as a result of its failure to satisfy a financial obligation and has available cash resources and financing or other sources of available funds in an amount sufficient to satisfy the transactions contemplated in this Agreement. Buyer has not employed any broker or finder or incurred any liability for any brokerage fee, commission or finder's fee in connection with the transactions contemplated by this Agreement. Buyer agrees and warrants that it will not resell any Product purchased under this Agreement to any third party without Seller's express written consent.

14. *Limitation of Liability* - BUYER'S EXCLUSIVE REMEDY AND SELLER'S EXCLUSIVE LIABILITY ARISING AS A RESULT OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT SHALL BE TO REPLACE ANY NONCONFORMING GOODS AT THE ORIGINAL POINT OF DELIVERY OR TO REFUND BUYER'S PURCHASE PRICE FOR ANY NONCONFORMING GOODS, WHICHEVER OPTION SELLER SELECTS. IN NO EVENT SHALL SELLER'S LIABILITY FOR ANY LOSS OR DAMAGE ARISING OUT OF OR RESULTING FROM THE TRANSACTION CONTEMPLATED HEREIN EXCEED BUYER'S PURCHASE PRICE FOR THE GOODS UPON WHICH LIABILITY IS BASED, REGARDLESS OF WHETHER SUCH LIABILITY ARISES IN CONTRACT (INCLUDING, BUT NOT LIMITED TO, FAILURE OR DELAY IN PERFORMANCE OR DELIVERY DUE TO ANY CAUSE WHATSOEVER), TORT (INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE OR STRICT LIABILITY) OR OTHERWISE. IN NO EVENT SHALL SELLER BE LIABLE TO BUYER FOR LOSS OF PROFITS OR REVENUE OR FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL OR PUNITIVE DAMAGES. REGARDLESS OF PRIOR DEALINGS, ANY CLAIM BY BUYER SHALL BE DEEMED WAIVED UNLESS PRESENTED IN WRITING TO SELLER WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY.

15. *Safety and Health* - Seller shall furnish to Buyer material safety data sheets, as required by law, including warnings and safety and health information concerning the products and/or the containers for such products sold to Buyer. Buyer agrees to disseminate such information so as to give warning of possible hazards to persons Buyer should reasonably foresee may be exposed to such hazards, including but not limited to, Buyer's employees, agents, contractors, or customers.

16. *Railcars & Demurrage Fees* – Buyer agrees to indemnify and hold Seller harmless from and against any and all losses, liabilities, damages, claims, suits, cost or expenses (including, without limitation, reasonable attorney's fees) arising from, or related to or incurred in connection with any negligent actions of Buyer or Buyer's agents or employees with respect to any railcar owned or leased by Seller while such railcar is located on or alongside Buyer's premises. Additional charges in the amount of fifty dollars ($50) per day will be invoiced for cars detained 90 to 120 days. Charges in the amount of seventy dollars ($70) per day will be invoiced for cars detained 121 to 150 days. Charges in the amount of ninety dollars ($90) per day will be invoiced for cars detained over 150 days. These charges will be invoiced on a weekly basis until railcar is released empty to Seller's carrier. Where incurred by Pinnacle, railroad facility charges may also be added to the additional demurrage charges set forth above.



**CONFIDENTIAL**

PO Drawer E, One Pinnacle Avenue, Garyville, Louisiana 70051  (985) 535-2000  Fax(985)535-1234

17. *Indemnification* – Buyer shall indemnify, hold harmless and, at Buyer's option, defend, Seller, its officers, directors, employees, and affiliates from and against any and all third party claims, demands and/or liabilities relating to the Buyer's use of the Product. Seller will defend, and pay any awards, excluding consequential and punitive awards, against Buyer in a suit that alleges that the manufacture or sale of any Product infringes a U.S. patent if Buyer gives Seller prompt notice, permits Seller to defend the suit and makes Buyer's employees and pertinent records available for the defense. Seller is not liable for any resulting or allegedly resulting infringement arising from Buyer's application of any Product.

18. *Assignability* - In the event of a sale, merger, consolidation, transfer of assets or equity, or other acquisition of the ownership or control of either Party by a third party (collectively, a "Disposition"), the Party engaging in such Disposition shall, as a condition thereto, require the survivor or acquirer to assume and perform all obligations of such Party under this Agreement. Subject to the foregoing condition, however, either Party may assign its rights hereunder to a third party which acquires or succeeds all or a substantial portion of its assets or business. Seller may assign this document including, without limitation, to its lender or lenders (or to such lender's or lenders' designee or subsequent assignee). No other assignments of the rights in this Agreement may take place without the express written consent of both Parties.

19. *Choice of Law and Jurisdiction* – This Agreement and any lawsuits brought pursuant to it shall be governed by the substantive laws of the Commonwealth of Pennsylvania. In the event of any dispute between the parties arising out of this Agreement or any of the transactions contemplated hereby, the parties agree and irrevocably consent to jurisdiction in the United States District Court for the Eastern District of Pennsylvania or the courts of the Commonwealth of Pennsylvania. In no event shall the United Nations Convention on Contracts for the International Sale of Goods (Vienna Sales Convention of 1980) or any other international treaty or law apply to this Agreement or the performance thereof.

20. *Notices* – All notices shall be given by (i) a nationally recognized next day courier service (with receipt demonstrating delivery), (ii) by certified mail, postage prepaid, (iii) by facsimile (with delivery confirmation), or (iv) by email (with a confirmation of delivery from recipient), sent:

To Seller:

Pinnacle Polymers
PO Drawer E
One Pinnacle Ave.
Garyville, LA 70051
Fax: 985-535-1234
Email: Deneice.Bercegeay@PinnaclePolymers.com
Attn: Deneice Bercegeay

With a Copy to:

Lance Rogers
Rogers & Associates, LLC
26 E. Athens Avenue
Ardmore, PA 19003
Email: Lance @RogersCounsel.com
Fax: 877-649-1880

To Buyer:

Mary McKenzi
F&M Tool and Plastics Inc.
163 Pioneer Drive, Leominster, MA 01453
(978) 798-7986
MMcKenzie@fmtool.com

21. *General* – (a) This Agreement constitutes the entire agreement of the parties with respect to the transactions contemplated herein and supersedes all prior oral and written promises, agreements, representations and conditions not contained in this Agreement. (b) No person is authorized to make any oral modification hereof, and written modifications may be made only by the agreement between the Parties' duly authorized officers. (c) In the event of any conflict or variance between the terms hereof and Buyer's business terms, including any terms that may be contained in any purchase order at any time hereafter received from Buyer, these terms shall prevail. (d) Each provision of this Agreement is severable from the rest. In the event that any provision contained herein is held to be invalid or unlawful, such provision shall be severed from the remaining provisions hereof, which shall remain in full force and effect. (e) No waiver of any provision hereof and no single waiver shall be held to constitute a continuing waiver or subsequent waiver. (f) Failure to strictly enforce this Agreement by either Party in any instance shall not bar subsequent enforcement. (g) This Agreement inures to the benefit of and is binding on all permitted successors and assigns. (h) Each party shall comply with all applicable national and local laws and regulations in connection with its activities pursuant to this Agreement. (i) In the event Seller prevails in litigation brought to enforce this Agreement, Buyer shall cover any and all reasonable expenses, including attorney's fees.

22. *Counterparts* – This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or data file signature page were an original thereof.



**CONFIDENTIAL**

PO Drawer E, One Pinnacle Avenue, Garyville, Louisiana 70051  (985) 535-2000  Fax(985)535-1234

JPinnacle's supply of Product is subject to market demand and availability. Accordingly, Pinnacle reserves the right to withdraw or modify this Proposal at anytime prior to being fully executed **by both parties**. By signing below, the Parties expressly agree to the terms set forth in this Agreement and represent that the signatory has authority to bind the organization to these terms.

| Seller | Buyer |
|---|---|
| PINNACLE POLYMERS, LLC | F&M TOOL and Plastics, INC. |
| By: [signature] | By: [signature] |
| Print Name ( MARK A. KNORR ) | Print Name ( Richard J. Locke ) |
| Title: PRESIDENT | Title: COO/CFO |
| Date: 04/03/18 | Date: March 19, 2018 |

*Please sign two original copies of this document and return to your Pinnacle Sales representative. Upon approval of Pinnacle senior management and Legal Department, we will return a fully executed copy.*

*If the publication, IHS Chemical / CMAI Monomers Market Report, is discontinued for any reason, or if the reporting methodology is significantly different than the methods existing at the commencement of this agreement, both parties agree to reconvene for the purpose of developing a new benchmark for price that is consistent with IHS Chemical / CMAI Monomers Market Report benchmark pricing existing at the commencement of this agreement.

**This proposal expires on March 19, 2018**